1  Steven M. Olson, Esq. (SB No. 146120)
   Jacob M. Faircloth, Esq. (SB No. 305390)
2  LAW OFFICE OF STEVEN M. OLSON
   50 Old Courthouse Square, Suite 401
3  Santa Rosa, CA 95404
   Telephone: (707) 575-1800
4  Facsimile: (707) 575-1867
   Email: smo@smolsonlaw.com
5
   Attorney for Nathan DeSomber
6
                    UNITED STATES BANKRUPTCY COURT
7
                    NORTHERN DISTRICT OF CALIFORNIA
8
9  In Re                               Case No. 21-51098-MEH
                                       (Chapter 7)
10 SEAN KILLEN,
11     Debtor.
   _____/
12
   NATHAN DESOMBER,                    A.P. No. _____
13
       Plaintiff,
14
   v.
15
   SEAN KILLEN,
16
       Defendant.
17 _____/

18          **COMPLAINT TO EXCEPT DEBT FROM DISCHARGE**

19        Nathan DeSomber (the "Plaintiff") alleges as follows:

20                              **I.**

21                           **PARTIES**

22        1.      Defendant Sean Killen (the "Defendant") is an individual and resident of

23 the State of California. He can be served with process via first-class mail sent to him at

24 his residential address of record, which is 110 Belglen Way, Los Gatos, California 95032

25 and sent to his attorney of record, Geoff Wiggs, at Law Offices of Geoff Wiggs, 1900

26 South Norfolk Street # 350, San Mateo, CA 94403.

27        2.      The Plaintiff is a judgment creditor of the Defendant.

28 //

**COMPLAINT TO EXCEPT DEBT FROM DISCHARGE** - Page 1

**II.**

**JURISDICTION AND VENUE**

3.      The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.  Furthermore, this is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), pursuant to the August 18, 2021, filing of the Chapter 7 petition of the Debtor commencing Case No. 21-51098-MEH. This complaint is brought pursuant to 11 U.S.C. § 523 and Federal Rule of Bankruptcy Procedure 7001. Venue is proper in this court pursuant to 28 U.S.C. § 1409(a). The Plaintiff consents to entry of a final order or judgment by the bankruptcy court.

**III.**

**CLAIM FOR RELIEF TO EXCEPT DEBT FROM DISCHARGE**

**(11 U.S.C. §523(A)(6))**

4.      The Plaintiff realleges the allegations contained in paragraphs 1 through 3 above.

5.      On June 1, 2017, the Plaintiff filed his First Amended Complaint for Libel; Aiding and Abetting Libel; Slander; Unfair Business Practices; Intentional Interference with Prospective Economic Relations; Demand for Jury Trial (the "First Amended Complaint") in San Francisco County Superior Court in Case No. CGC-16-555094. A true and correct copy of the First Amended Complaint is attached hereto as Exhibit 1. The Plaintiff hereby incorporates, by this reference, all allegations set forth in the First Amended Complaint.

6.      On August 28, 2020, the San Francisco County Superior Court issued its Memorandum re Default Prove-Up Hearing and Order (the "Order"). A true and correct copy of the Order, plus the Plaintiff's September 10, 2020, Notice of Entry of Judgment or Order, is attached hereto as Exhibit 2 and, by this reference, is incorporated herein.

7.      Also on August 28, 2020, the San Francisco County Superior Court issued its $402,059.16 Judgment for the Plaintiff and against the Defendant. A true and correct copy of the Judgment is attached hereto as Exhibit 3 and, by this reference, is

incorporated herein.

8.     The Judgment is final and is not appealable.

9.     The Judgment arises from defamatory statements of the Defendant, as detailed in the First Amended Complaint. The Defendant intentionally made each of the defamatory statements set forth in the First Amended Complaint. When the Defendant made each of these statements, the Defendant had the subjective intent to harm the Plaintiff or, in the alternative, the Defendant had the subjective belief that harm to the Plaintiff was substantially certain to occur. When the Defendant made each of these statements, the Defendant knew the statements were false. When the Defendant made each of these statements, the Defendant did so without any just cause or excuse. Each of these statements necessarily caused injury to the Plaintiff.

WHEREFORE, the Plaintiff respectfully requests that the Court:

1.     Issue judgment determining that the Judgment is excepted from the Defendant's discharge;

2.     In the alternative, issue a money judgment for the Plaintiff for his damages arising from the Defendant's defamatory statements and except this judgment from the Defendant's discharge;

3.     Award the Plaintiff his costs of suit and attorney's fees to the fullest extent authorized by applicable law; and

4.     Grant the Plaintiff such other and further relief, at law or in equity, to which the Plaintiff may be justly entitled.

DATED: November 15, 2021          LAW OFFICE OF STEVEN M. OLSON

*/S/ Steven M. Olson*
By: _____
　　　　　　　Steven M. Olson
ATTORNEY FOR PLAINTIFF

# EXHIBIT 1

Katy M. Young (SBN 267791)
Trina M. Clayton (SBN 204215)
**AD ASTRA LAW GROUP, LLP**
582 Market Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 795-3579
Facsimile: (415) 276-1976

Attorneys for Plaintiff
NATHAN DESOMBER

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**06/01/2017**
**Clerk of the Court**
BY:EDNALEEN ALEGRE
Deputy Clerk

IN THE SUPERIOR COURT OF SAN FRANCISCO

COUNTY OF SAN FRANCISCO – UNLIMITED DIVISION

| | |
|---|---|
| NATHAN DESOMBER,<br><br>Plaintiff,<br><br>v.<br><br>SEAN KILLEN, QUIL, INC., and DOES 1 to 10,<br><br>Defendants. | CASE NO.: CGC-16-555094<br><br>FIRST AMENDED COMPLAINT FOR LIBEL; AIDING AND ABETTING LIBEL; SLANDER; UNFAIR BUSINESS PRACTICES; INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; DEMAND FOR JURY TRIAL<br><br>Complaint Filed: October 28, 2016<br><br>Trial Date: None Assigned |

Plaintiff NATHAN DESOMBER alleges as follows:

**INTRODUCTION**

1.      This is an action for damages arising out of an email circulated by Defendant SEAN KILLEN falsely stating that Plaintiff NATHAN DESOMBER of breached his fiduciary duty by diverting in funds from the Bernal Heights Cooperative. Upon information and belief, SEAN KILLEN subsequently aided and abetted the re-publication of the email to an entirely different audience by providing said email to Todd Lappin with the knowledge and intent that Todd Lappin would publish the email in his online blog, Bernalwood. Defendants' twice publication of this knowingly false statement of fact has had a devastating impact on Plaintiff's life.

**FIRST AMENDED COMPLAINT**

**PARTIES**

2.     Plaintiff NATHAN DESOMBER ("Plaintiff") is an individual who resides in San Francisco County, California.

3.     Plaintiff is informed and believes and thereon alleges that Defendant QUIL, Inc. ("QUIL") is a Delaware Corporation, registered to do business in California with its principal place of business in San Francisco, California.

4.     Plaintiff is informed and believes and thereon alleges that Defendant SEAN KILLEN ("KILLEN") is an individual who resides in San Francisco County, California, and that he is the sole owner of QUIL.

5.     Plaintiff is ignorant of the true names and capacities of Does 1 through 10, and therefore sues those defendants by their fictitious names. Plaintiff will amend his complaint to name those defendants when he ascertains their names and capacities. Plaintiff is informed and believes and thereon alleges that each fictitiously named defendant is responsible in some manner for the manners about which Plaintiff complains, and that each legally caused Plaintiff's harm.

6.     Plaintiff is informed and believes and thereon alleges that each defendant was the agent or employee of the other and that each was acting within the scope of that agency or employment.

**JURISDICTION AND VENUE**

7.     The court has personal jurisdiction over Defendant KILLEN because he resides in the state of California.

8.     The court has personal jurisdiction over Defendant QUIL because it is a corporation registered to do business in California, with its principal place of business in San Francisco, California.

9.     Venue in this court is proper because the Defendants reside in this county, and the injuries to Plaintiff occurred in this county.

///

///

///

**FIRST AMENDED COMPLAINT**

## FACTUAL ALLEGATIONS

**Plaintiff is an Upstanding Member of the Community**

10.     Plaintiff graduated from the University of California at Berkeley in 2007 where he earned numerous honors including being an All-American in the Shot Put in 2001. Plaintiff assisted with Throwing Clinics at UC Berkeley from 2000 to 2002 and worked as Assistant Throws Coach at City College of San Francisco from 2005 to 2006. Plaintiff was hired as Assistant Throws Coach for San Francisco State University on individual annual contracts in 2013, 2014 and 2015; he also owns and operates several small businesses in and around the city of San Francisco. Plaintiff has during all this time enjoyed a good reputation, both generally and in his professional capacities as a coach and small business owner.

**Plaintiff's Involvement with Sean Killen and Quil, Inc.**

11.     In May 2015, Plaintiff was hired as Director of Product Operations ("DPO") by Steam Labs, Inc., a medical marijuana collective. Steam Labs, Inc. was the collective arm of Defendant QUIIL, INC. ("QUIL"), an online business that sells and delivers a variety of cannabis products for medical use to individuals in San Francisco and all areas south to San Jose.

12.     On information and belief, Defendant KILLEN is the sole owner of QUIL, he is also in charge of the daily operations of QUIL.

13.     As DPO for Steam Labs/QUIL, Plaintiff oversaw the entire production line, was responsible for the products sold, decided the vendors with whom QUIL would work, and decided what product to buy, what product packaging to use, and the product price points.

14.     In addition to his work as DPO, Plaintiff also supplied product to QUIL and was to receive compensation for his labor efforts to produce said product.   Plaintiff has not received full compensation for his labor efforts.

15.     Plaintiff also purchased a Honda Civic to be used as QUIL's delivery vehicle. Plaintiff has not been compensated for the purchase of this vehicle.

16.     In July 2015, QUIL contracted with Plaintiff to perform product testing to determine the potency and safety of QUIL's products – for a flat fee of $1,400. Plaintiff performed said potency and safety testing, but he was never compensated for his work.

**FIRST AMENDED COMPLAINT**

1  **Plaintiff's Involvement with Bernal Heights Collective**

2      17.    In October 2015, Plaintiff was hired as DPO for the medical cannabis dispensary,

3  Bernal Heights Collective ("BHC"). He also performed the duties and responsibilities of BHC's

4  Chief Operating Officer ("COO"), managing the employees as well as running the day to day

5  operations of the collective. Plaintiff also served on the Board of Directors for BHC.

6      18.    Additionally, Plaintiff supplied product to BHC and was to receive compensation for

7  his labor efforts to produce said product.

8      19.    Plaintiff also leased three vending machines to BHC.

9  **Quil, Inc. Becomes Part of BHC and Killen Plots to Overtake BHC for his Own**

10     20.    On or about October 2015, Plaintiff and KILLEN orally agreed that QUIL would

11  become part of BHC, as QUIL needed "brick and mortar" BHC to satisfy regulatory requirements.

12     21.    KILLEN, as owner of QUIL, joined the BHC Board of Directors.

13     22.    BHC assumed all of QUIL's inventory and other assets; it also assumed QUIL's

14  debt, including the debt owed to Plaintiff for his work at QUIL.

15     23.    KILLEN made clear to Plaintiff additionally that QUIL's debt to Plaintiff would be

16  paid through BHC. Upon information and belief, KILLEN treated BHC as his and QUIL's own

17  piggy bank,

18     24.    Plaintiff is informed and believes and thereon alleges that KILLEN, acting

19  individually and in his capacity as owner of QUIL, was devising a plan to remove Plaintiff from

20  BHC so QUIL could acquire full ownership interest in BHC by controlling the Board.

21     25.    Plaintiff is informed and believes and thereon alleges that KILLEN further wanted to

22  remove Plaintiff from BHC so he could retain all the profits from BHC.

23     26.    Shortly after KILLEN joined the Board of Directors, he removed BHC's debit card

24  Point of Sale system, patient records, and patient verification and entry system from the BHC

25  property, without permission or justification.

26     27.    In response, Plaintiff was obligated to pay for security updates for BHC, as well as

27  pay for a new telephone system and a new Point of Sale system so that BHC could continue to take

28  client orders. Plaintiff was not compensated for any of these items.

1    28.    KILLEN then installed a new patient entry system at BHC which illegally forced

2    patients to sign up as QUIL members instead of members of the medical dispensary BHC, in

3    violation of the Medical Cannabis Act, Article 33 of the San Francisco Health Code.

4    29.    In November 2015, Plaintiff began to look for a new location for BHC as its lease

5    was up in April 2016. It was around this time that Plaintiff learned BHC was due for its annual

6    inspection by the San Francisco Department of Public Health ("SFDPH"). Plaintiff knew BHC

7    would be unable to pass inspection for two reasons – 1) its patient entry system was set up to record

8    patients as members of QUIL, not BHC, and 2) BHC's Sellers Permit was suspended for failure to

9    pay sales tax (through no act or omission of Plaintiff's).

10    30.    In order to clear BHC's tax debt and reinstate its Seller's Permit, Plaintiff managed

11    to secure a personal loan for the amount of $72,000. Plaintiff used the loan to pay BHC's tax debt

12    on or about December 14, 2015. Plaintiff has not been reimbursed any amount of the $72,000.

13    31.    On or near January 30, 2015, QUIL placed an order with Plaintiff for product to be

14    sold through QUIL. The labor compensation Plaintiff was to receive for this quantity of product

15    was $5,000. Plaintiff did not receive any compensation for his product advance to QUIL.

16    32.    In or near January 2015, Plaintiff provided product to be sold at BHC. The labor

17    compensation Plaintiff was to receive for the BHC product was $19,000. Plaintiff did not receive

18    any compensation for his product or material advance to BHC.

19    33.    Plaintiff is informed and believes and thereon alleges that on February 1, 2016, once

20    he had paid off BHC's outstanding tax debt, KILLEN, on behalf and for the benefit of QUIL,

21    decided to put into action his plan for to acquire full ownership interest in BHC. Killen lured

22    Plaintiff to an off-site meeting during which time QUIL employees changed the locks at BHC. The

23    same QUIL employees then gave the San Francisco Police Department false information in order to

24    prevent Plaintiff from re-entering the BHC premises.

25    34.    Plaintiff immediately went to the SFDPH and informed them of the lock-out;

26    SFDPH scheduled a resolution hearing to address the issue.

27    35.    On or around February 16, 2016 KILLEN and Plaintiff both attended the SFDPH

28    hearing. At least two SFDPH employees were present at the meeting, as were several members of

**FIRST AMENDED COMPLAINT**

| | |
|---|---|
| 1 | the general public. KILLEN falsely represented at the hearing that Plaintiff had been removed from |
| 2 | BHC's Board of Directors. |

3 **Killen Attempts to Make his False Statements to SFDPH True by Defaming Plaintiff**

4       36.    On February 18, 2016, KILLEN sent an email to members of BHC, asking them to

5 ratify the removal of Plaintiff from the Board of Directors. The text of the email is as follows:

> Your Cooperative - Your Vote
>
> You are receiving this email as a member of Bernal Heights Cooperative. As the oldest operating in San Francisco, Bernal Heights Cooperative has built a legacy as a community institution that provides safe and affordable access to medical cannabis for all patients. This legacy is being threatened (click here to learn more and to sign our petition to the city), so we are calling on our members to vote toward securing our future in San Francisco.
>
> The details of the vote are as follows:
>
> In February, Nathan DeSomber and Johnny Batista were removed from the board of the Bernal Heights Cooperative for breaches of their fiduciary duties to the Cooperative.
>
> Nathan DeSomber diverted in excess of $30,000 to himself and his friends. Johnny Batista failed to pay the cooperative's tax liabilities for many years, resulting in debts of hundreds of thousands of dollars to the cooperative. Johnny also falsified W2's for cooperative members so that he could profit at their expense.
>
> We need our members to vote on our actions.
>
> If you support the removal of Nathan DeSomber and Johnny Batista, please click yes.
>
> In order for our actions to be considered valid, we need 51% of the affirmative voters to vote yes. You must cast your vote by (four full days from when sent).
>
> Thank you,
>
> Bernal Heights Cooperative

27 A true and correct copy of the aforementioned e-mail message is attached as **Exhibit A**. Note that

28 at the bottom of the page, the footer indicates that the email is affiliated with Quil, Inc.

1    37.    Plaintiff is informed and believes and thereon alleges that KILLEN, in his capacity

2    as owner of QUIL, was the author of the February 18, 2016 email and that he distributed the email

3    to all members of the Cooperative who had provided email addresses (over 3,000).

4    38.    As a direct and proximate result of this email containing false and defamatory

5    statements, Plaintiff's membership in BHC was revoked, he lost his position as BHC Director of

6    Operations and he was removed from the BHC Board.

7    39.    As a direct and proximate result of this email containing false and defamatory

8    statements and his subsequent removal from BHC, Plaintiff lost the right to lease vending machines

9    to BHC.

10    40.    As a direct and proximate result of this email containing false and defamatory

11    statements and his subsequent removal from BHC, Plaintiff lost the right to compensation for his

12    labor to produce product donated to BHC.

13    **Killen Amplifies his Defamatory Statement**

14    41.    Plaintiff is informed and believes, and thereon alleges, that Todd Lappin ("Lappin")

15    is a San Francisco resident who founded and is the "Central Command" contributor to the online

16    blog, "Bernalwood."

17    42.    Bernalwood touts itself as a "community-powered news magazine about fabulous

18    Bernal Heights, San Francisco."

19    43.    Plaintiff is informed and believes and thereon alleges that on or before March 1,

20    2016, KILLEN sent an email to Lappin, forwarding the February 18, 2016 email referenced in

21    paragraph 36 (Exhibit A).

22    44.    Plaintiff is informed and believes and thereon alleges that at the time he forwarded

23    the February 18, 2016 email to Lappin, KILLEN knew Lappin would publish the email in the

24    Bernalwood blog, thereby defaming Plaintiff to all readers of said blog.

25    45.    On March 1, 2016, Lappin authored and published an article in the Bernalwood blog

26    entitled, "Facing Eviction, Marijuana Dispensary Seeks to Relocate to Former Gun Shop." In the

27    article, Lappin states that there has been "much disarray at Bernal Heights Cooperative in recent

28

1  weeks," and represented to readers that "[a]n email sent to cooperative members tells a tale of
2  financial impropriety and management turmoil."

3      46.    The blog article contained a hyperlink to the above-referenced "Your Cooperative –
4  Your Vote" email set forth in paragraph 36, forwarded to Lappin by KILLEN. The blog article also
5  republished the content of the email, and included the allegation that "Nathan DeSomber diverted in
6  excess of $30,000 to himself and his friends," in the body of the article.

7      47.    Plaintiff is informed and believes and thereon alleges that thousands of Bernalwood
8  readers have seen and read the March 1, 2016 post about Plaintiff's alleged embezzlement of funds.

9      48.    Plaintiff is informed and believes and thereon alleges that the March 1, 2016
10 Bernalwood post has been seen and read by thousands of other individuals, aside from the
11 Bernalwood readers, as this blog post was one of the top five results displayed when conducting an
12 internet "Google search" for "Nathan DeSomber."

13      49.    Plaintiff was specifically told that he was not re-hired to his former position as
14 Assistant Throw Coach for San Francisco State University after operative members of the hiring
15 committee read the March 1, 2016 Bernalwood blog post.

16      50.    Plaintiff is informed and believes and thereon alleges that as a result of the false and
17 defamatory statements published in the Bernalwood blog, he has been unable to obtain other
18 employment as he is excluded from consideration once potential employers (performing even the
19 most basic background search) read the false and defamatory statements published in the March 1,
20 2016 Bernalwood blog post.

21      51.    Todd Lappin has since removed the offending article.

22                          **FIRST CAUSE OF ACTION**
23                          **DEFAMATION - LIBEL**
24                          **(AGAINST ALL DEFENDANTS)**

25      52.    Plaintiff realleges and incorporates by reference the previous allegations in the
26 preceding paragraphs.

27

28

**FIRST AMENDED COMPLAINT**

1      53.    The statements made by KILLEN, individually and in his capacity as owner of

2  QUIL, in the February 18, 2016 email to the BHC members regarding Plaintiff's conduct, are false

3  and defamatory.

4      54.    KILLEN published these false and defamatory statements with constitutional malice

5  in that he knew the statements were false, or acted with reckless disregard for the truth of these

6  statements.

7      55.    As a direct result of KILLEN's wrongful acts, Plaintiff has suffered emotional

8  distress and other damage and has suffered an indelible mark on his reputation. Plaintiff is entitled

9  to general damages for his loss of reputation, shame, mortification, hurt feelings, and emotional

10  distress in an amount in excess of $400,000.

11      56.    Plaintiff is entitled to special damages for the damage done to his business, trade,

12  profession, or occupation, including amounts of money Plaintiff expended as a result of the

13  KILLEN's defamatory statements and assertions. In particular, Plaintiff's membership in BHC was

14  revoked and he lost all future income derived from his management and board member duties at

15  BHC, lost revenue generated through the lease of his vending machines to BHC, lost revenue

16  derived from his compensation for product donated to BHC, lost revenue derived from his

17  compensation for product to QUIL, and lost compensation for the debt owed to him by QUIL. A

18  full accounting of Plaintiff's special damages is set forth below in Plaintiff's Prayer for Relief.

19      57.    KILLEN acted with reckless, willful, or callous disregard for Plaintiff's rights and

20  with malice, fraud or oppression toward Plaintiff, thereby entitling Plaintiff to an award of punitive

21  damages in an amount in excess of $700,000.

22                                 **SECOND CAUSE OF ACTION**

23                                    **AIDING AND ABETTING LIBEL**

24                                    **(AGAINST ALL DEFENDANTS)**

25      58.    Plaintiff realleges and incorporates by reference the previous allegations in the

26  preceding paragraphs.

27

28

**FIRST AMENDED COMPLAINT**

1    59.   Plaintiff is informed and believes and thereon alleges that on or before March 1,

2  2016, KILLEN sent an email to Lappin in his capacity as owner of QUIL, INC. or in his personal

3  capacity, forwarding the February 18, 2016 false and defamatory email (Exhibit A).

4    60.   Plaintiff is informed and believes and thereon alleges that at the time he forwarded

5  the February 18, 2016 email to Lappin, KILLEN knew Lappin was going publish the false and

6  defamatory email in the Bernalwood blog.

7    61.   Plaintiff is informed and believes and thereon alleges that KILLEN gave substantial

8  assistance or encouragement to Lappin by providing Lappin the February 18, 2016 email with the

9  knowledge Lappin would publish the email in the Bernalwood blog.

10    62.   Plaintiff is informed and believes and thereon alleges that he was harmed through

11  Lappin's publishing of the February 18, 2016 email in the Bernalwood blog in that thousands of

12  individuals saw the March 1, 2016 post and, as a result of the defamatory statements contained

13  therein, Plaintiff was not re-hired to his former position as Assistant Throw Coach for San

14  Francisco State University.

15    63.   Plaintiff's previous salary as Assistant Throw Coach for San Francisco State

16  University was $10,500 per year.

17    64.   Plaintiff is informed and believes and thereon alleges that as a result of the false and

18  defamatory statements published in the Bernalwood blog, he has been further harmed in that he has

19  been unable to obtain other employment as he is excluded from consideration once potential

20  employers (performing even the most basic background search) read the false and defamatory

21  statements published in the March 1, 2016 Bernalwood blog post.

22    65.   The posted salary for one job in which Plaintiff was specifically excluded from

23  consideration because of the Bernalwood post was $30,000.00.

24    66.   KILLEN's conduct was a substantial factor in causing harm to Plaintiff in that

25  Lappin would not have been able to publish the February 18, 2016 email in the Bernalwood blog if

26  KILLEN had not provided it to him.

27    67.   As a direct result of KILLEN's wrongful acts, Plaintiff has suffered emotional

28  distress and other damage and has suffered an indelible mark on his reputation. Plaintiff is entitled

**FIRST AMENDED COMPLAINT**

1  to general damages for his loss of reputation, shame, mortification, hurt feelings, and emotional
2  distress in an amount in excess of $400,000.

3  68.  Plaintiff is entitled to special damages for the damage done to his business, trade,
4  profession, and occupation, including amounts of money Plaintiff expended as a result of the
5  KILLEN's defamatory statements and assertions in an amount in excess of $10,500.00.

6  69.  KILLEN acted with reckless, willful or callous disregard for Plaintiff's rights and
7  with malice, fraud or oppression toward Plaintiff, thereby entitling Plaintiff to an award of punitive
8  damages in an amount in excess of $700,000.

9  ### THIRD CAUSE OF ACTION

10  ### DEFAMATION - SLANDER

11  ### (AGAINST ALL DEFENDANTS)

12  70.  Plaintiff realleges and incorporates by reference the previous allegations in the
13  preceding paragraphs.

14  71.  Plaintiff is informed and believes and thereon alleges that beginning in February
15  2016 and continuing through at least July 2016, KILLEN, in his personal capacity or as owner of
16  QUIL, INC. has been orally representing to third parties that Plaintiff "stole" or "embezzled" over
17  $30,000 from BHC.

18  72.  The statements made by KILLEN regarding Plaintiff's conduct are false and
19  defamatory.

20  73.  KILLEN published these false and defamatory statements with constitutional malice
21  in that he knew the statements were false, or acted with reckless disregard for the truth of these
22  statements.

23  74.  As a direct result of KILLEN's wrongful acts, Plaintiff has suffered emotional
24  distress and other damage and has suffered an indelible mark on his reputation. Plaintiff is entitled
25  to general damages for his loss of reputation, shame, mortification, hurt feelings, and emotional
26  distress in an amount in excess of $400,000.

27  75.  Plaintiff is entitled to special damages for the damage done to his business, trade,
28  profession, and occupation, including amounts of money Plaintiff expended as a result of the

**FIRST AMENDED COMPLAINT**

1    KILLEN's defamatory statements and assertions. A full accounting of Plaintiff's special damages

2    is set forth below in Plaintiff's Prayer for Relief.

3       76.    KILLEN acted with reckless, willful or callous disregard for Plaintiff's rights and

4    with malice, fraud or oppression toward Plaintiff, thereby entitling Plaintiff to an award of punitive

5    damages in an amount in excess of $700,000.

6                         **FOURTH CAUSE OF ACTION**

7                         **UNFAIR BUSINESS PRACTICES**

8                        **(AGAINST ALL DEFENDANTS)**

9       77.    Plaintiff realleges and incorporates by reference the previous allegations in the

10    preceding paragraphs.

11       78.    Defendants have engaged in unlawful, unfair and fraudulent practices in violation of

12    Business and Professions Code section 17200 et seq. in at least the following respects:

13        a.   Publishing false and defamatory statements that Plaintiff diverted in excess of

14           $30,000 from the Bernal Heights Collective to himself and his friends.

15        b.   Publishing false and defamatory statements that Plaintiff was removed from the

16           board of the Bernal Heights Cooperative for his breach of fiduciary duty to the

17           collective.

18        c.   Publishing other false and defamatory statements as contained in the email described

19           in paragraph 24.

20        d.   Publishing false and defamatory statements that Plaintiff "stole" or "embezzled"

21           over $30,000.

22       79.    Defendants have engaged in this conduct for the purpose of removing Plaintiff from

23    the BHC, taking over ownership of the BHC, usurping opportunities, and otherwise injuring

24    Plaintiff.

25       80.    As a proximate result of Defendants' actions Plaintiff suffered actual damages as set

26    forth below in Plaintiff's Prayer for Relief.

27

28

**FIRST AMENDED COMPLAINT**

1        81.    In committing the acts alleged above, Defendants acted with malice, oppression and

2 fraud, in conscious disregard of Plaintiff's rights, and with the malicious intent of injuring Plaintiff.

3 Plaintiff is thus entitled to punitive damages in an amount in excess of $700,000.

4        82.    Defendants' wrongful conduct, unless and until enjoined and restrained by order of

5 this court, will continue to cause great and irreparable injury to Plaintiff's reputation and potential

6 business and employment opportunities. Plaintiff is informed and believes and thereon alleges that

7 this conduct will result in an irreversible blemish to his reputation and an infinite number of lost

8 business and employment opportunities. Plaintiff is informed and believes and thereon alleges that

9 he will continue to be denied employment and will continue to suffer irreparable damage to his

10 reputation and goodwill if not restrained. Such damage is difficult or impossible to reverse. It

11 results in the loss of substantial income and ongoing and irreparable harm to Plaintiff's reputation

12 and goodwill. Plaintiff has been harmed an suffered damage of at least $400,000 already.

13       83.    Plaintiff therefore has no adequate remedy at law for the full extent of the injuries he

14 has suffered and continues to suffer. Unless injunctive relief is granted, he will suffer ongoing and

15 irreparable harm to his reputation and goodwill, and irreversible loss of income from vanished

16 employment opportunities. Plaintiff is therefore entitled to injunctive relief.

## FIFTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS
## (AGAINST KILLEN)

20       84.    Plaintiff realleges and incorporates by reference the previous allegations in the

21 preceding paragraphs.

22       85.    At all relevant times, Plaintiff enjoyed an economic relationship with BHC as

23 Director of Product Operations and Chief Operating Officer, and as a leasor of vending machines

24 and as a supplier of product.

25       86.    Defendant KILLEN knew of these economic relationships from his work with

26 Plaintiff at BHC and as fellow members of BHC's Board.

27       87.    Defendant intentionally disrupted these relationships, including by publishing to

28 members of BHC through the February 18, 2016 email false and defamatory accusations against

**FIRST AMENDED COMPLAINT**

1  Plaintiff, making misrepresentations in connection with such unlawful behavior, and usurping the
2  opportunities that had been cultivated by Plaintiff.

3      88.    Defendant accomplished this interference by unlawful means, including the violation
4  of statutory prohibitions on unfair competition and defamation in connection with such interference.

5      89.    Actual disruption of these economic relations occurred. As a proximate result of
6  defendant's actions, Plaintiff suffered actual damages in that his membership in BHC was revoked
7  and he lost all future income derived from his management and board member duties at BHC, lost
8  revenue generated through the lease of his vending machines to BHC, lost revenue derived from his
9  compensation for product donated to BHC, lost revenue derived from his compensation for product
10 to QUIL, and lost compensation for the debt owed to him by QUIL. A full accounting of Plaintiff's
11 damages is set forth below in Plaintiff's Prayer for Relief.

12     90.    Defendants' unlawful conduct was a substantial factor in causing Plaintiff's harm.

13     91.    In committing the acts alleged above, Defendants acted with malice, oppression and
14 fraud, in conscious disregard of Plaintiff's rights, and with the malicious intent of injuring Plaintiff.
15 Plaintiff is thus entitled to an award of punitive damages in an amount in excess of $700,000.

16     92.    Defendants' wrongful conduct, unless and until enjoined and restrained by order of
17 this court, will continue to cause great and irreparable injury to Plaintiff's reputation and potential
18 business and employment opportunities. Plaintiff is informed and believes and thereon alleges that
19 this conduct will result in an irreversible blemish to his reputation and an infinite number of lost
20 business and employment opportunities. Plaintiff is informed and believes and thereon alleges that
21 he will continue to be denied employment and will continue to suffer irreparable damage to his
22 reputation and goodwill if not restrained. Such damage is difficult or impossible to reverse. It
23 results in the loss of substantial income and ongoing and irreparable harm to Plaintiff's reputation
24 and goodwill. Plaintiff has been harmed and suffered damages of at least $400,000 so far.

25     93.    Plaintiff therefore has no adequate remedy at law for the full extent of the injuries he
26 has suffered and continues to suffer. Unless injunctive relief is granted, he will suffer ongoing and
27 irreparable harm to his reputation and goodwill, and irreversible loss of income from vanished
28 employment opportunities. Plaintiff is therefore entitled to injunctive relief.

14
**FIRST AMENDED COMPLAINT**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

1. For general, compensatory, special and incidental damages as follows:

 a. **$5,138** for the costs associated with the purchase of the Honda Civic for QUIL;

 b. **$1,400** for the product testing Plaintiff performed for QUIL;

 c. **$4,000** to replace the Point of Sale system which had been unlawfully removed by KILLEN;

 d. **$7,000** for a new security system at BHC;

 e. **$5,520** for Ooma telephone systems Plaintiff purchased for use at QUIL and at BHC;

 f. **$18,000** for unpaid profit from the vending machines Plaintiff leased to BHC;

 g. **$72,000** for the personal loan Plaintiff secured to pay off BHC's past-due tax debt, in order to reinstate BHC's Seller's Permit;

 h. **$130,000** for nine months of service Plaintiff provided to QUIL/Steam Labs as Director of Product Operations, and four months of service he provided to BHC as Chief Operating Officer and Director of Product Operations.

 i. **$24,000** for unpaid inventory/product and material advances Plaintiff provided to QUIL and BHC;

 j. **$350,000** for net profit from Plaintiff's supply of product to BHC. This amount continues to accrue at the rate of $25,000 per month;

 k. **$52,500** for net profit from Plaintiff's supply of product to QUIL. This amount continues to accrue at the rate of $3,750 per month;

 l. **$81,000** for lost revenue from pre-prepared cartridges Plaintiff had made for BHC, consistent with BHC's usual demand, prior to his unlawful removal from BHC;

 m. **$66,000** for lost revenue from pre-prepared resin concentrate ($16,000) and cartridge juice ($50,000) Plaintiff had made for BHC, consistent with BHC's usual demand, prior to his unlawful removal from BHC;

 n. **$900** for two scientific scales Plaintiff loaned to BHC;

 o. **$1,000** for 40 glass storage jars Plaintiff loaned to BHC;

1            p.  **$100** for one pair of stainless steel tweezers Plaintiff loaned to BHC;

2            q.  **$475** for a dabbing unit Plaintiff loaned to BHC;

3            r.  **$30,000.00** for the lost salary Plaintiff would have earned from the position he lost

4                due to the false and defamatory article in the Bernalwood blog.

5            s.  General damages for loss of reputation, shame, mortification, hurt feelings, and

6                emotional distress in an amount in excess of **$400,000**;

7     2.  Punitive damages in an amount in excess of **$700,000**;

8     3.  For an Order requiring Defendants to show cause, if any they have, why they should

9 not be enjoined as hereinafter set forth, during the pendency of this action;

10    4.  For a temporary restraining order, a preliminary injunction, and a permanent

11 injunction requiring Defendants and their agents, servants and employees, and all persons acting

12 under, in concert with, or for them, within five days of service of the preliminary injunction, to:

13            a.  Identify to counsel for Plaintiff under penalty of perjury every email address

14                to which the email in paragraph 36 was sent and the name of the person or

15                persons associated with each email address; and

16            b.  Publish via email to the same persons identified in paragraph 4a a retraction

17                of the false and defamatory statements made in the original email and an

18                apology, the form of which shall be approved in advance by counsel for

19                Plaintiff; and

20            c.  Refrain from any further oral allegation, assertion, comment or

21                representation that Plaintiff stole, absconded, embezzled or in any other way

22                misappropriated funds from BHC.

23     5.  For reasonable attorneys' fees;

24     6.  For treble damages;

25     7.  For the costs of suit; and

26 ///

27 ///

28 ///

**FIRST AMENDED COMPLAINT**

1        8.      For such other and further relief as the court deems proper.

Dated: June 1, 2017            **AD ASTRA LAW GROUP, LLP**

By _____
     Katy M. Young, Esq.
     Trina M. Clayton, Esq.
     Attorneys for NATHAN DESOMBER

17
**FIRST AMENDED COMPLAINT**

# EXHIBIT 2

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Katy M. Young (SBN 267791); Charlie Chou (SBN 248369); Hannah M. Stitt (SBN 309349) Ad Astra Law Group, LLP 582 Market Street, 17th Floor San Francisco CA 94104  TELEPHONE NO.:415-795-3579     FAX NO. *(Optional):*415-276-1976  E-MAIL ADDRESS *(Optional):* kyoung@astralegal.com  ATTORNEY FOR *(Name):* Plaintiff NATHAN DESOMBER | **ELECTRONICALLY** **F I L E D** *Superior Court of California,* *County of San Francisco*  **09/10/2020** **Clerk of the Court** BY: YOLANDA TABO-RAMIREZ Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME: Civic Center Courthouse

PLAINTIFF/PETITIONER: NATHAN DESOMBER

DEFENDANT/RESPONDENT: SEAN KILLEN, et al.

| NOTICE OF ENTRY OF JUDGMENT OR ORDER | CASE NUMBER: CGC-16-555094 |
|---|---|
| *(Check one):*  ☑ **UNLIMITED CASE** (Amount demanded exceeded $25,000)    ☐ **LIMITED CASE** (Amount demanded was $25,000 or less) | |

**TO ALL PARTIES :**

1. A judgment, decree, or order was entered in this action on *(date):* **August 28, 2020**

2. A copy of the judgment, decree, or order is attached to this notice.

Date: **September 10, 2020**

**Katy M. Young**
_____
(TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

_____
(SIGNATURE)

**Page 1 of 2**

Form Approved for Optional Use
Judicial Council of California
CIV-130 [New January 1, 2010]
**NOTICE OF ENTRY OF JUDGMENT OR ORDER**
www.courtinfo.ca.gov

Case: 21-05052   Doc# 1   Filed: 11/15/21   Entered: 11/15/21 13:09:08   Page 23 of 31

| PLAINTIFF/PETITIONER: NATHAN DESOMBER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: SEAN KILLEN, et al. | CGC-16-555094 |

# PROOF OF SERVICE BY FIRST-CLASS MAIL AND EMAIL VIA ONE LEGAL
## NOTICE OF ENTRY OF JUDGMENT OR ORDER

*(NOTE: You cannot serve the Notice of Entry of Judgment or Order if you are a party in the action. The person who served the notice must complete this proof of service.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

   **Ad Astra Law Group, LLP**
   **582 Market Street, 17th Street**
   **San Francisco, CA 94104**

2. I served a copy of the *Notice of Entry of Judgment or Order* by enclosing it in a sealed envelope with postage fully prepaid and *(check one):*

   a. ☑ deposited the sealed envelope with the United States Postal Service.

   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Entry of Judgment or Order* was mailed:

   a. on *(date):* **September 10, 2020**

   b. from *(city and state):* **San Francisco, California**

4. The envelope was addressed and mailed as follows:

   a. Name of person served:
   **Vernon C. Goins, II; Law Office of Vernon C. Goins**
   Street address: **1970 Broadway, Suite 450**
   City: **Oakland**
   State and zip code: **California, 94612**
   Email: **vgoins@goinslawfirm.com**

   c. Name of person served:
   Street address:
   City:
   State and zip code:

   b. Name of person served:
   Street address:
   City:
   State and zip code:

   d. Name of person served:
   Street address:
   City:
   State and zip code:

   ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

5. Number of pages attached _____.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: **September 10, 2020**

**Richard Muliyil**
_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

1   Prepared by the Court

F I L E
Superior Court of California
County of San Francisco

AUG 2 8 2020

CLERK OF THE COURT
BY: _Rosalie H. Hempel_
        Deputy Clerk

E-SERVICE
65886680
Aug 28 2020
05:20PM
File & ServeXpress

8                    **SUPERIOR COURT OF CALIFORNIA**

9                         **County of San Francisco**

10                        Department No. 505

12   NATHAN DESOMBER,                    | No. CGC-16-555094

13              Plaintiff,               MEMORANDUM RE DEFAULT PROVE-UP
                                         HEARING AND ORDER RG
14   v.

15   SEAN KILLEN, et al,

16              Defendants.

19        A default prove-up hearing was held on August 28, 2020. Katy Young appeared for

20   plaintiff Nathan DeSomber. Martin Poggio appeared for defendant Sean Killen, though his sole

21   role was as an observer, not as a participant, Three witnesses testified: Jason Peiser, James

22   Stemble, and Mr. DeSomber.

23        At the conclusion of the hearing, I stated that the only proved damages on the claims

24   alleged in the first amended complaint were general damages (as defined in Civil Code

Page 1

48a(d)(1)) of $400,000. Because it appeared that Mr. DeSomber might be able to allege additional claims for which he might have provable damages, I gave Mr. DeSomber the choice of entry of judgment for $400,000 plus costs or leave to file a second amended complaint. Mr. Deomber chose entry of judgment, and that is what I will do.

I issue this brief memorandum to state why I rejected all of the claimed special damages and the punitive damages by Mr. DeSomber in his first amended complaint.

All five of Mr. DeSomber's claims are based on two acts of defamation: one on February 18, 2016 and the other on March 1, 2016. However, the testimony at the hearing established that all of Mr. DeSomber's claimed special damages resulted from actions taken by Mr. Killen on or about February 1, 2016 when Mr. Killen removed Mr. DeSomber as a "co-owner-partner," employee and active participant in the affairs of Bernal Heights Collective, not the later occurring acts of defamation..

Moreover, even if all of Mr. DeSomber's claimed special damages did result from the acts of defamation, Mr. DeSomber failed to prove any of those damages. All of the claimed special damages were based on BHC's failure to pay certain monies to Mr. DeSomber for expenses incurred by Mr. DeSomber on behalf of BHC, for Mr. DeSomber's services to BHC and for product Mr. DeSomber "donated" to BHC, all of which were contingent on BHC"s ability to pay those items, yet the evidence showed that BHC had not paid those items due to its poor financial condition and there was no evidence that BHC was ever in a financial position to pay any of those items. Indeed, BHC ceased operations shortly after the acts of defamation after being evicted from its premises. Nor was it alleged or any evidence that Mr. Killen personally guaranteed any of those items.

1   Mr. DeSomber's argument that his Bus. & Prof. Code 17200 claim alleged liability other

2   than for the two acts of defamation lacks merit and, in all events, only restitution, not damages,

3   are available per section 17200.

4        The sole evidence of Mr. Killen's financial condition, which is a necessary for the award

5   of punitive damages, was unreliable multiple levels of hearsay which also violated the secondary

6   evidence rule. (Evidence Code 1523). To award punitive damages on such unreliable and

7   inadmissible evidence would not be "just and in violation of the prove-up statute. (CCP 585(b)).

8   Dated: August 28, 2020

9                                   _____
                                        Harold Kahn
10                                      Superior Court Judge

11

12                          HAROLD KAHN

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.260(g))


       I, Rosallie Gumpal, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

       On August 28, 2020, I electronically served the attached Memorandum Re Default Prove-Up Hearing and Order via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated: August 28, 2020

                T. Michael Yuen, Clerk


                By: _____
                       Rosallie Gumpal, Deputy Clerk

# EXHIBIT 3

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
Katy M. Young (SBN 267791); Charlie Chou (SBN 248369); Hannah M. Stitt (SBN 309349)
Ad Astra Law Group, LLP
582 Market Street, 17th Floor San Francisco CA 94104

TELEPHONE NO.: 415-795-3579    FAX NO. *(Optional):* 415-276-1976
E-MAIL ADDRESS *(Optional):* kyoung@astralegal.com
ATTORNEY FOR *(Name):* Plaintiff NATHAN DESOMBER

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME: Civic Center Courthouse

PLAINTIFF: NATHAN DESOMBER

DEFENDANT: SEAN KILLEN, et al.

**FOR COURT USE ONLY**

F I L E D
Superior Court of California
County of San Francisco

AUG 2 8 2020

CLERK OF THE COURT
BY: _Rosalie A. Siegel_
Deputy Clerk

CASE NUMBER:
CGC-16-555094

| | JUDGMENT | |
|---|---|---|
| ☐ By Clerk | ☑ By Default | ☐ After Court Trial |
| ☑ By Court | ☐ On Stipulation | ☐ Defendant Did Not Appear at Trial |

**JUDGMENT**

1. ☑ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☑ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☑ plaintiff's testimony and other evidence.
      (2) ☑ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):*
      before *(name of judicial officer):*
   b. Appearances by:
      ☐ Plaintiff *(name each):*
         (1)
         (2)
      ☐ Continued on Attachment 3b.

      ☐ Defendant *(name each):*
         (1)
         (2)
      ☐ Continued on Attachment 3b.

      ☐ Plaintiff's attorney *(name each):*
         (1)
         (2)

      ☐ Defendant's attorney *(name each):*
         (1)
         (2)

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.
   d. ☐ A statement of decision (Code Civ. Proc., § 632) ☐ was not ☐ was requested.

Page 1 of 2

| PLAINTIFF: NATHAN DESOMBER | CASE NUMBER: |
|---|---|
| DEFENDANT: SEAN KILLEN, et al. | CGC-16-555094 |

**JUDGMENT IS ENTERED AS FOLLOWS BY:** ☑ **THE COURT** ☐ **THE CLERK**

4. ☐ **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

a. ☑ for plaintiff *(name each):*
NATHAN DESOMBER

    and against defendant *(names):*
SEAN KILLEN

    ☐ Continued on Attachment 5a.

b. ☐ for defendant *(name each):*

c. ☐ for cross-complainant *(name each):*

    and against cross-defendant *(name each):*

    ☐ Continued on Attachment 5c.

d. ☐ for cross-defendant *(name each):*

6. **Amount.**

a. ☑ Defendant named in item 5a above must pay plaintiff on the complaint:

| (1) | ☑ | Damages | $ ~~1~~ 400,000.00 |
|---|---|---|---|
| (2) | ☐ | Prejudgment interest at the annual rate of   % | $ |
| (3) | ☐ | Attorney fees | $ |
| (4) | ☑ | Costs | $ 2059.16 |
| (5) | ☐ | Other *(specify):* | $ |
| (6) | | **TOTAL** | $ ~~1~~ 402,059.16 |

c. ☐ Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| (1) | ☐ | Damages | $ |
|---|---|---|---|
| (2) | ☐ | Prejudgment interest at the annual rate of   % | $ |
| (3) | ☐ | Attorney fees | $ |
| (4) | ☐ | Costs | $ |
| (5) | ☐ | Other *(specify):* | $ |
| (6) | | **TOTAL** | $ |

b. ☐ Plaintiff to receive nothing from defendant named in item 5b.
    ☐ Defendant named in item 5b to recover costs $
        ☐ and attorney fees $

d. ☐ Cross-complainant to receive nothing from cross-defendant named in item 5d.
    ☐ Cross-defendant named in item 5d to recover costs $
        ☐ and attorney fees $

7. ☐ Other *(specify):*

Date: 8/28/2020

☑ _____
HAROLD KAHN

Date: _____

☐ Clerk, by _____, Deputy

---

| (SEAL) | **CLERK'S CERTIFICATE** *(Optional)* |
|---|---|
| | I certify that this is a true copy of the original judgment on file in the court. |
| | Date: |
| | Clerk, by _____, Deputy |

Page 2 of 2

JUD-100 [New January 1, 2002] **JUDGMENT**